1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MICHELLE-LAEL B. NORSWORTHY,          Case No.  1:20-cv-00813-ADA-HBK (PC)

12                  Plaintiff,              FINDINGS AND RECOMMENDATIONS TO
                                            GRANT IN PART AND DENY IN PART
13            v.                            PLAINTIFF'S MOTION TO FILE A SECOND
                                            AMENDED COMPLAINT[1]
14    KATHLEEN ALLISON, JANEL
      ESPINOZA, MICHAEL PALLARES,           (Doc. No.  60)
15    IKWINDER SINGH, ROBERT
      MITCHELL, and ROSELLE BRANCH,         FOURTEEN-DAY OBJECTION PERIOD
16
                    Defendants.
17

18          Pending is Plaintiff's Motion for Leave to File Second Amended Complaint filed on June

19    10, 2022 (Doc. No. 60, "Motion").  Appended to the Motion is Plaintiff's proposed Second

20    Amended Complaint.  (Doc. No. 60-1).  Defendant filed an Opposition to the Motion.  (Doc. No.

21    62, "Opposition").  Plaintiff filed a Reply.  (Doc. No. 63, "Reply").  For the reasons discussed

22    below, the undersigned recommends the district court grant in part and deny in part Plaintiff's

23    Motion.

24                                   **I.  BACKGROUND**

25          Plaintiff, represented by counsel, initiated this action while incarcerated by filing a civil

26    rights complaint under 42 U.S.C. §1983 on March 16, 2020 in the Northern District of California.

27    _____

28    [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
      (E.D. Cal. 2022).

1  (Doc. No. 1).  After transfer to this Court, a discovery and scheduling order issued on June 12,

2  2020.  (Doc. Nos. 28, 29, 31).  Plaintiff filed a First Amended Complaint (FAC) on May 14,

3  2021, and Defendants filed their Answer on June 8, 2021.  (Doc. Nos. 41, 44).  The Court granted

4  the parties stipulated request to extend certain deadlines, including the deadline to amend the

5  pleadings.  (Doc. No. 59).

6        Plaintiff's FAC sets forth a single Eight Amendment medical deliberate indifference

7  claim against Defendants Kathleen Allison, Janel Espinoza, Michael Pallares, IK Winder Singh,

8  Robert Mitchell and Roselle Branch.  (Doc. No. 41).  Plaintiff, a post-operative transgender

9  woman, alleges the Defendants violated her Eighth Amendment rights by not providing her

10  medical care when she was recommitted to the custody of the California Department of

11  Corrections and Rehabilitation (CDCR) and housed at Central California Women's Facility

12  (CCWF) from March 25, 2019, and January 13, 2022.  (*See generally* Id.).  In support, Plaintiff

13  complains the named Defendants did not provide sufficient pain medications to treat pain from a

14  revision surgery she received before she returned to custody.  (*Id.* at ¶ 33).  Plaintiff also complains

15  that she did not receive sufficient douches to prevent infection.  (*Id.* at ¶ 50).  And, after CDCR

16  provided Norsworthy another revision surgery for her vagina, Plaintiff complains CDCR once again

17  failed to provide her sufficient pain medication following the procedure.  (*Id.* at ¶ 54).  Plaintiff's

18  primary complaint is that CDCR did not provide her another revision surgery to deepen her vagina.

19  (*Id.* at ¶¶ 55-65, 84).  She submits CDCR is responsible for a loss in her vaginal depth because CCWF

20  did not sufficiently accommodate her privacy, thus forcing her to refuse to dilate her vagina.  (*Id.* at ¶¶

21  41-50).  As relief, Plaintiff seeks injunctive relief—an order directing CDCR to provide her an

22  additional surgical procedure to deepen her vagina, as well as punitive and compensatory damages.

23  (*Id.* at ¶¶ 84-85).

24        Plaintiff timely filed the Motion attaching a proposed Second Amended Complaint (SAC).

25  (Doc. No. 60-1).  The SAC seeks to name additional defendants to Plaintiff's current Eighth

26  Amendment Medical Deliberate Indifference Claim as well as assert two new claims.

27  Specifically, the SAC seeks:  (1) to additionally name  Leslie Taylor, Chenoa Dill, Sergeant

28  Gibson, Gerardo Garcia-Torres, Officer Shoals, and Officer Goethe to Plaintiff's original Eighth

1   Amendment claim for failure to provide medically necessary care (Count I); (2) to assert a new

2   Fourteenth Amendment Equal Protection claim as to Defendants Allison, Espinoza, Pallares,

3   Mitchell, Felix, Haynes, and Villanueva (Count II); and (3) to assert a new Eighth Amendment

4   failure to protect claim as to Defendants Allison, Espinoza, Pallares, Cowing, and Villanueva

5   (Count III).  (*See generally Id.*).

6        In support of her Motion, Plaintiff cites to Rule 15(a)'s policy of favoring amendments

7   with "extreme liberality" and asserts there will be no undue prejudice that will result to the

8   Defendants because of the amendments.  (Doc. No. 60 at 8-9).  Plaintiff explains she wishes to

9   remedy, in a single action, all constitutional violations she suffered while incarcerated at CCWF

10  on account of her transgender identity.  (*Id.* at 9).  Plaintiff only learned of the additional

11  defendants and claims through written discovery and depositions.  (*Id.*).  Plaintiff argues the

12  amendments are not futile; and, therefore, all the factors under *Foman v. Davis* weigh in her

13  favor.  (*Id.* 7-9); *see* 371 U.S. 178, 182 (1962).  Plaintiff does not address the addition of the

14  parties or claims under Fed. R. Civ. P. 18 or 20.

15       Defendants oppose Plaintiff's SAC to the extent Plaintiff seeks to add the two new

16  unrelated claims, Counts II and III.  (Doc. No. 62 at 4).  Defendants explain that while Plaintiff's

17  operative complaint concerns a single Eight Amendment claim for a failure to provide medically

18  necessary care, the proposed SAC includes unrelated claims "concerning the parole board, an

19  alleged failure to properly punish a completely different inmate, and an incident involving yet a

20  different inmate chasing Norsworthy around."  (*Id.*).  Defendants argue the added claims will

21  create confusion because there is no showing how the current Defendants are involved with the

22  new claims in the amended complaint.  (*Id.*).  Defendants point out the instant action has been

23  pending since 2020, the parties have engaged in extensive discovery and the new unrelated claims

24  involve different defendants who will need to conduct their own discovery, therefore delaying

25  resolution of the case.  (*Id.* at 4-5).  Further, Defendants contend because of the different nature of

26  the new claims, the claims will need to be bifurcated (severed) to avoid undue prejudice to the

27  Defendants.  (*Id.*).  Finally, Defendants contend that the Plaintiff's proposed added claims should

28  be denied because they are futile and do not state sufficient facts to merit relief.  (*Id.* at 5-6).

1    In reply, Plaintiff notes that by not addressing Plaintiff's proposed amendment to her first
2    claim—i.e., by adding defendants to her Eight Amendment claim for failure to provide medically
3    necessary care—Defendants have "waived any argument as to why the Court should disallow"
4    this proposed amendment.  (Doc. No. 63 at 2).  Plaintiff counters no unnecessary delay or
5    prejudice will result since there is no trial date; and the proposed amendments are timely filed
6    within the Court's February 7, 2022 Order amending the deadlines in the discovery and
7    scheduling order.  (*Id*. at 3-4).  Finally, Plaintiff asserts the proposed amendments are not futile
8    and Defendants' arguments are conclusory and mischaracterize the proposed amendments.  (*Id*. at
9    4-5).

## II.  APPLICABLE LAW AND ANALYSIS

**Federal Rules of Civil Procedure 15 and 20**

12    Generally, Federal Rule of Civil Procedure 15 governs the circumstances when a party
13    may amend its pleadings.  When a motion is filed within the timeframe set forth in the court's
14    case management and scheduling order, a party is normally entitled to the "liberal amendment
15    procedures afforded by Rule 15."  *AmerisourceBergen Corp. v. Dialysist W., Inc*., 465 F.3d 946,
16    952 (9th Cir. 2006).  Rule 15 mandates this Court to "freely give leave when justice so requires."
17    Fed. R. Civ. P. 15(a)(2).  "In the absence of any apparent or declared reason—such as undue
18    delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies
19    by amendments previously allowed undue prejudice to the opposing party by virtue of allowance
20    of the amendment, [or] futility of amendment" leave must be "freely given."  *Foman v. Davis*,
21    371 U.S. 178, 182 (1962).  When considering the *Foman* factors, case law cautions that
22    "prejudice to the opposing party . . . carries the greatest weight."  *Eminence Capital, LLC v.
23    Aspen, Inc*.  316 F. 3d 1048, 1052 (9th Cir. 2003).

24    However, Fed. R. Civ. P. 20 regulates whether parties may be joined.  Thus, where a party
25    seeks to join additional parties to an amended pleading, the party must satisfy both Rules 15 and
26    20.  Rule 20 is relevant to the futility factor, because as a matter of law, a plaintiff may not bring
27    unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2).  The
28    burden to demonstrate prejudice or futility falls upon the party opposing the amendment.  *DCD*

4

1  *Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

2  **Additional Defendants: Count I- Eighth Amendment Deliberate Indifference**

3  As discussed *supra*, Plaintiff proposes to add Leslie Taylor, Chenoa Dill, Sergeant

4  Gibson, Gerardo Garcia-Torres, Officer Shoals, and Officer Goethe to her Count I Eighth

5  Amendment medical deliberate indifference claim.  (Doc. No. 60-1 at 35, ¶¶ 101-110).  While on

6  the face of their opposition Defendants oppose Plaintiff's motion in its entirety, the opposition is

7  silent as to Plaintiff's request to join additional defendants to her original medical deliberate

8  indifference claim.  (*See generally* Doc. No. 62).  Rather, Defendants only address Plaintiff's

9  request to add the new Count II and III claims.  (*See id.*).  Plaintiff correctly argues in her reply

10  that Defendants waived any argument relating to her request to join the additional defendants to

11  her Count I medical indifference claim because Defendants failed to address it in their opposition.

12  (Doc. No. 63 at 3:17-22).  The undersigned agrees.  *See Meehan v. County of Los Angeles*, 856

13  F.2d 102, n. 1 (9th Cir. 1988) (stating that a party's refusal to brief an issue constituted

14  abandonment of the issue); *Mountjoy v. Bank of Am. N.A.*, 2018 WL 339060, at *4 (E.D. Cal. Jan.

15  8, 2018) ("failure to respond to in an opposition brief to an argument put forward in an opening

16  brief constitutes waiver or abandonment in regard to the uncontested issue.") (Citation omitted);

17  *Mesa v. Enloe Medical Center*, 2021 WL 1187274, at *3 (E.D. Cal. Mar. 30, 2021) ("The Court

18  finds Plaintiff's failure to address Defendants' legal arguments itself constitutes waiver.").  Here,

19  Defendants waived any opposition to the joinder of Leslie Taylor, Chenoa Dill, Sergeant Gibson,

20  Gerardo Garcia-Torres, Officer Shoals, and Officer Goethe to Plaintiff's Eighth Amendment

21  medical deliberate indifference claim as articulated in Count I.

22  Putting aside Defendants' silence, the undersigned nonetheless finds the joinder of these

23  proposed defendants satisfy both mandates of Fed. R. Civ. P. 20(a)(2).  Further, the *Foman*

24  factors weigh in favor of Plaintiff's request to join these additional defendants.  During discovery,

25  Dr. Taylor was identified as the Chair of the Statewide Medical Authorization Review Team

26  (SMART) who overruled the prior decision to provide Plaintiff with the needed surgery.

27  Documents produced in discovery also revealed that Captain Chenoa Dill, Sergeant Gibson, and

28  Officers Gerardo Garcia-Torres, Shoals, and Goethe were involved in communications during the

relevant time during which Plaintiff alleges she was not provided with necessary medical care. The Court conceives no prejudice by joining these additional proposed defendants to Plaintiff's already existing Eighth Amendment medical deliberate indifference claim. The proposed amendment is timely (notably Defendants joined Plaintiff in a joint stipulation to amend the discovery and scheduling order); joining the additional defendants does not change the scope of this litigation because the gravamen of the claim remains the same—Plaintiff was denied medically necessary care due to defendant's deliberate indifference while she was in their custody; discovery has been ongoing as it relates to this claim and Plaintiff asserts no additional time will be needed by adding these defendants (Doc. No. 60 at 8); and there is no scheduled trial date. Finally, the undersigned finds that adding Leslie Taylor, Chenoa Dill, Sergeant Gibson, Gerardo Garcia-Torres, Officer Shoals, and Officer Goethe as defendants is not futile because Plaintiff has stated a cognizable Eighth Amendment medical deliberate indifference claim. Thus, the undersigned recommends granting Plaintiff's Motion as to this requested amendment.

**New Claim: Count II-Fourteenth Amendment Equal Protection Claim**

Plaintiff seeks to add as Count II a new claim against Allison, Espinoza, Pallares, Mitchell, Felix, Haynes, and Villanueva alleging a Fourteenth Amendment Equal Protection claim. (Doc. No. 60-1 at ¶¶111-123). Plaintiff incorporates by reference paragraphs 1-85 in support of Count II and alleges three distinct violations of the Equal Protection Clause. Plaintiff acknowledges she brings this claim due to "a blatantly anti-transgender environment at CCFW." (Id., ¶ 83). First, Plaintiff alleges Felix, Haynes, and Villanueva discriminated against Plaintiff and violated the Equal Protection Clause by using belittling and degrading comments towards Plaintiff. (*Id.* at ¶ 114). Specifically, Plaintiff claims Felix, Haynes and Villanueva each "routinely insulted, degraded, and belittled Ms. Norsworthy on the basis of her post-operative, transgender woman" status. (Doc. No. 60-1, ¶¶ 20, 21, 22). These verbal insults included comments such as, "you are a man," "you sound like a man," "your voice is too deep," "you don't look like a woman," and "you don't belong here [at CCWF.]) (*Id*., ¶¶ 84, 114). Plaintiff also complains that "staff" regularly referred to Plaintiff using the incorrect pronouns, i.e, "he" and "him." (*Id*., 114).

Due to "bias" unidentified staff issued "meritless" disciplinary writeups "that damaged her chances of obtaining parole."  (*Id.*, ¶ 85).  Plaintiff attributes these unspecified writeups as the reason the parole board denied Plaintiff parole in August 2020.  (*Id.*).  As a result, Plaintiff claims she lived in fear of receiving any disciplinary writeups; and, indeed agreed to undertake certain tasks and jobs despite her medical restrictions.  (*Id.*, ¶¶ 86-87).  As evidence of disparate treatment, Plaintiff points to a single incident involving a cisgender inmate who had harassed Plaintiff on one occasion and was issued a write up.   (*Id.* ¶ 85).  The writeup was removed by an unidentified correctional officer, who is not named as a defendant, so that the writeup would not negatively impact the cisgender inmate at a future parole or clemency hearing.  (*Id.* ¶ 85).

Plaintiff next states she "filed numerous CDCR 602 appeals about this behavior, alerting [unspecified] Defendants to the problem."  (*Id.*, ¶ 115).  Plaintiff predicates her second equal protection claim against Espinoza and Pallares, the Warden and Deputy Warden at CCWF, on the alleged basis that they allegedly "permitted, tolerated, and were deliberately indifferent to a pattern, practice, or custom of CDCR officers and employees of discriminating against Ms. Norsworthy."  (*Id.* at ¶ 117).

Plaintiff's third proposed equal protection claim alleges Defendants Drs. Mitchell and Taylor treated her differently in connection with her medical care solely based on her post-operative transgender woman status.  (*Id.*, ¶ 118).  In support, Plaintiff points to Drs. Mitchell and Taylor's respective positions—namely Dr. Mitchell oversaw the care team who failed to provide Plaintiff with sufficient supplies to douche or the means to privately dilate, and Dr. Taylor was the chair of the SMART committee that ultimately denied Plaintiff the deepening procedure.  (*Id.*).  The proposed SAC otherwise is devoid of any facts as to how surgical and/or other medical care differed for any other group of inmates, including cisgender inmates.

Other than being identified in the header under Count II, there are no allegations included on what grounds Plaintiff bases her equal protection claim on as to Defendant Allison, the Secretary of CDCR.  (*Id.* at 37, ¶¶111-123).

**New Claim:  Count III- Eighth Amendment Failure to Protect Claim**

Finally, Plaintiff seeks to include as Count III a third new claim against Defendants

7

1   Allison, Espinoza, Pallares, Cowing, and Villanueva for an alleged Eighth Amendment failure to

2   protect claim.  (*Id*. at 34-35).  Once again, Plaintiff incorporates paragraphs 1 through 85 to

3   support her Eight Amendment failure to protect claim.  (*Id*. at 34, ¶124).[2]  Cowing, like

4   Villanueva, was not named in the FAC.  Plaintiff states "upon information and belief" officer

5   Cowing "tried to pit inmates against," her, including the inmate involved in an incident that

6   occurred in the dayroom on August 4, 2021, to "sabotage her parole eligibility." (*Id*., ¶ 23).

7   Plaintiff alleges that Villanueva was present in the dayroom on August 4, 2021, and "allowed

8   another inmate to attack" Plaintiff.  (*Id*., ¶ 22).  As to Defendants Espinoza and Pallares, Plaintiff

9   alleges that despite knowing that CDCR staff and other prisoners wished to harm Plaintiff, they

10  failed to take any action to protect her.  (*Id*., ¶126-127).  Regarding the attack by another inmate

11  on August 4, 2021, Plaintiff states Villanueva "sat idly in an adjacent room while [Plaintiff] was

12  under attack" and both Villanueva and Cowing "tried to pit inmates against" Plaintiff and "tried

13  to cover up the attack." (*Id*., ¶ 128).  Again, other than being identified in the header under Count

14  III, there are no allegations included on what grounds Plaintiff bases her failure to protect claim

15  on as to Defendant Allison, the Secretary of CDCR.  (*Id*. at 39, ¶¶124-129).

16           **Counts II and III are Unrelated to Claim in Count I**

17           At the outset, the undersigned notes Felix, Haynes and Villanueva and Cowling were not

18  named in Plaintiff's FAC nor were they sought to be added to Plaintiff's amended Eighth

19  Amendment deliberate medical indifference claim.  Plaintiff's attempt to comingle claims

20  because "they all concern constitutional violations that Ms. Norsworthy endured during her

21

22  ———————————————
    [2] The SAC incorporates paragraphs 1-85 in support of Count III.  A review of the proposed SAC leads the
    Court to believe that paragraphs 88-100 would be more appropriate to support Plaintiff's proposed third
23  claim.  Plaintiff, who is represented by counsel and therefore not entitled to a liberal construction of her
    pleadings.  *Nazarian v. Urbie*, 2012 WL 4739915, at n. 8 (C.D. Cal. Aug. 3, 2012) ("Petitioner is not
24  entitled to liberal construction of his pleadings, however, because he is represented be counsel."); *Brown v.
    Navarro*, 2022 WL 17348178, at n.5 (C.D. Cal. Jun. 13, 2022) ("A petitioner represented by counsel is not
25  entitled to the liberal construction of pleadings afforded to unrepresented petitioners."); *Petersen v. Frink*,
    2015 U.S. Dist. LEXIS 175366, at *4 (D. Mont. Aug. 10, 2015) ("Although the Amended Petition relies
26  on the facts alleged in Peterson's pro se submissions, the Amended Petition was filed by counsel.  It is not
    entitled to liberal construction…"); *Paige v. Pulse Bev. Corp.*, 2017 U.S. Dist. LEXIS 7762, at *15 (D.
27  Haw. Jan. 19, 2017) ("As Ms. Paige is a licensed attorney currently appearing on behalf of the corporate
    Plaintiff, Plaintiffs' Complaint is not entitled to the liberal construction generally due pro se plaintiffs.");
28  (*see also* Doc. No. 60-1 at 34).

incarceration" (Doc. No. 63 at 2), is unavailing.  The Federal Rules of Civil Procedure permit persons to be joined as defendants if the "right to relief asserted against them" arises out of "the same transaction, occurrence, or series of transactions or occurrences" and involves a common question of law or fact as to all defendants in the action.  Fed. R. Civ. P.  20(a)(2); *Desert Empire Bank v. Insurance Co. of N. Am.,* 623 F.2d 1371, 1375 (9th Cir.1980).  The pleading rules do not permit a conglomeration of unrelated claims against unrelated defendants in a single lawsuit.  Unrelated claims must be filed in separate lawsuits.  *K'napp v. California Dept. of Corrections*, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013), *aff'd sub nom K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed. Appx. 791 (9th Cir. 2015) (alteration in original) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)).

"The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or series of transactions or occurrences' to require a degree of factual commonality underlying the claims." *Bravado Int'l Grp. Merch. Servs. v. Cha*, 2010 WL 2650432, at *4 (C.D. Cal. Jun. 30, 2010) (citing *Coughlin v. Rogers,* 130 F.3d 1348, 1350 (9th Cir. 1997)).  There is no connection between Plaintiff's proposed Fourteenth Amendment equal protection claim and her Eighth Amendment failure to protect claim and her Eighth Amendment medical deliberate indifference claim.  The factual predicate for each of the three claims is different.  Each of three counts do not share the same law.  The facts giving rise to each of the claims differ greatly.  The mere fact that all three claims arise under the U.S. Constitution does not establish a common question of law or fact.  *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).  "Without such a connection, it is not clear that these claims should or even can be tried before the same jury." *Caruso v. Solorio*, 2019 WL 6009465, *3 (E.D. Cal. Nov. 14, 2019).  "Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party." *Solis v. Cnty. of Stanislaus*, No. 1:14-CV-0937-BAM, 2015 WL 4557485, at *3 (E.D. Cal. July 27, 2015); *see also Pace v. Timmermann's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 755 n. 10 (7th Cir. 2015) ("Thus, joinder of claims under Rule 18 becomes relevant only after the requirements of Rule 20 relating to joinder of parties has been met. . .").  Further, as discussed *infra*, Plaintiff's effort to

9

1  avoid the prohibition of Rule 20 by attributing the acts by Felix, Haynes and Villanueva and

2  Cowling to the current named Defendants is futile.

3       Because Counts II and III are wholly unrelated to the Count I, the Court may deny the

4  request to amend without further analysis.  Nonetheless, in an abundance of caution, the

5  undersigned considers the *Foman* factors.

6       **Permitting the Claims in Count II and III Would Prejudice Defendants**

7       Even if Plaintiff could fulfill Rule 20(a)(2)'s requirements, the "court must examine

8  whether permissive joinder would 'comport with the principles of fundamental fairness' or would

9  result in prejudice to either side."  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir.

10  2000) (quoting *Desert Bank,* 623 F.2d at 1375).  Similarly, Rule 15's liberal pleading requirement

11  similarly are subject to the *Foman* factors.  Defendants argue the joined claims will necessitate

12  new discovery, delay this case, and ultimately require a bifurcated trial.  (*See generally* Doc. No.

13  62).  The Court agrees.

14       The SAC alleges a general and systemic animus by correctional officers at CCWF against

15  post-operative transgender women inmates based on offensive comments made by Defendants

16  Felix, Haynes and Villanueva and meritless writeups by unnamed correctional officials and then

17  seeks to ascribe this animus to Defendants Warden Espinoza and Deputy Warden Pallares due to

18  their supervisory position.  Similarly, without any factual predicate, Plaintiff claims this animus,

19  which she only recently discovered during discovery, formed the basis for Drs. Taylor and

20  Mitchell's medical decisions.  In support of her failure to protect claim, Plaintiff points to an

21  August 4, 2021 incident where Plaintiff was chased and "attacked"[3] by another inmate and

22  Defendant Villanueva failed to immediately respond.  Plaintiff then posits that this incident was

23  instigated by Defendant Cowing and done to thwart Plaintiff's parole eligibility.  Plaintiff claims

24

---

25  [3] Although referred to as an "attack" the proposed SAC contains no allegations that the inmate physically
interacted with Plaintiff or that Plaintiff suffered any physical injuries from the incident.  Rather, it alleges

26  "out of nowhere another inmate began calling [Plaintiff] names" and yelling she "intended to hurt
[Plaintiff]."  (Doc. No. 60-1, ¶ 89).  The inmate "ran towards" Plaintiff "with clenched fists" and Plaintiff

27  "ducked, and tried to move away" until the officers, including Villanueva, came from their office into the
dayroom and ordered the other inmate to the floor, handcuffed the other inmate and escorted them out of

28  the dayroom. (*Id.*, ¶ 89).

1   that Espinoza and Pallares were aware that unspecified "staff and other prisoners wished to harm"

2   Plaintiff and "jeopardize her chances of parole."  The SAC does not state how Espinoza or

3   Pallares were made aware of the alleged harm or any incident.

4          Discovery in this case commenced in June 2021, and although stayed for five months

5   while the parties engaged in settlement discussions, the discovery has been limited to Plaintiff's

6   medical deliberate indifference claim.  Discovery relevant to either Plaintiff's equal protection or

7   failure to protect claims would require the parties to essentially start anew.  In addition to the

8   evidence to support each of the claims being different, there is real possibility of juror confusion

9   if these unrelated issues were tired together.  The trial court would be forced to sever these claims

10   to avoid the serious risk that the jury might consider evidence or events related to the proposed

11   defendants who treated Plaintiff with animosity because of her transgender status against the

12   other current named Defendants who would be defending that their actions were not based on

13   medical deliberate indifference.  Additional confusion is likely to arise as to which jury

14   instructions relate to which cause of action and which defendants.  Thus, in addition to any

15   prejudice due to the delay caused be reopening discovery for these new and unrelated claims,

16   Defendants are likely to suffer prejudice due to jury confusion.

17          Further, Plaintiff's assertion that she only learned of the basis of these claims during

18   discovery is dubious.  Plaintiff contends throughout the duration of her confinement she was

19   subjected to a hostile and discriminatory environment.  Further, she clearly was present during the

20   August 2021 incident where another inmate chased her in the dayroom.  The events of which

21   Plaintiff complains and which are the foundation of her equal protection and failure to protect

22   claims did not just come to light.  Plaintiff provides no reason why she unduly waited to raise

23   these claims.  Thus, in addition to finding claims and defendants in Counts I and II improperly

24   joined because they are unrelated, the undersigned finds Plaintiff unduly delayed in bringing

25   these claims in this action and, most importantly, the inclusion of these unrelated claims would

26   greatly prejudice Defendants.

27          ////

28          ////

11

**The Claims in Count II and III as Plead are Futile**

    **a.   No Respondent Superior**

At the outset, other than identifying Defendant Allison, the Secretary of CDCR in the header of Counts II and III, the Counts are devoid of any allegation as to the Secretary.  Thus, neither Count states a claim as to Defendant Allison.

Similarly, the proposed SAC is devoid of any factual allegations that Defendants Warden Espinoza or Deputy Warden Pallares participated in or directed the violations or knew of the alleged acts that Plaintiff identifies in support of her equal protection or failure to protect claims. "There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).  A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations or know of the violations and failed to act to prevent them.  *Id.*; *see also Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011).

For the same reason, the SAC fails to state a claim under Count II as to Dr. Mitchell and Dr. Taylor.  There are no facts alleged from which the Court can infer that Drs. Mitchell and Taylor denied Plaintiff medical care because of her post-operative, transgender woman status. The SAC is silent as to how either Dr. Mitchell or Dr. Taylor participated in or directed the violations or knew of the violations of Plaintiff's rights under the Equal Protection Clause and failed to prevent them.  Instead, the SAC attributes liability solely to each of the Defendants based on their respective supervisory positions as the Chief Medical Executive and Chair of the SMART committee.  As already discussed *supra*, there is no respondeat superior liability under section 1983.

    **b.   Equal Protection**

"The Equal Protection Clause of the Fourteenth Amendment commands that no state may deny any person within its jurisdiction equal protection of the law.  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  "This does not mean, however, that all prisoners must receive identical treatment and resources."  *Blackgold v. Kern Valley State Prison Case Records*, 2021 WL 8342904, *3 (E.D. Cal. Oct. 7, 2021) (citing *Cruz v. Beto*, 405 U.S. 319, 322 n.2

1    (1972)).  "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause

2    of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or

3    purpose to discriminate against the plaintiff based upon a membership in a protected class."

4    *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing *Washington v. Davis*, 426 U.S.

5    229, 239-40, 96 (1976)).  Discrimination on the basis of gender presentation is subject to

6    heightened scrutiny under the equal protection clause.  *See Norsworthy v. Beard*, 87 F. Supp.3d

7    1104, 1119 (N.D. Cal. 2015) (holding that "discrimination based on transgender status

8    independently qualifies as a suspect classification under the Equal Protection Clause," because a

9    person "is defined as transgender precisely because of the perception that his or her behavior

10   transgresses gender stereotypes," and "[t]here is thus a congruence between discriminating

11   against transgender and transsexual individuals and discrimination on the basis of gender-based

12   behavioral norms." (internal quotation marks omitted, citing *Swenk v. Hartford*, 204 F.3d 1187

13   (9th Cir. 2000)).

14         Plaintiff's equal protection claims against Felix, Haynes, and Villanueva stems from

15   correctional officer's Felix, Haynes, and Villanueva verbal taunts, slurs, and/or derogatory

16   comments.  The SAC does not allege that other non-transgender inmates are not subject to verbal

17   taunts or derogatory name calling.  Nonetheless, courts have long held that such name calling

18   alone does not give rise to a constitutional violation.  *Jefferson v. Cabral*, No.

19   EDCV201158JVSKS, 2020 WL 5235656, at *3 (C.D. Cal. Sept. 2, 2020) (collecting cases).  To

20   the extent that Plaintiff contends she was improperly written up due to her transgender status,

21   there are no allegations that Felix, Haynes, and Villanueva had any involvement in those actions.

22         **c.   Failure to Protect**

23         "[P]rison officials have a duty to protect prisoners from violence at the hands of other

24   prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotation omitted).  "The failure of

25   prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth

26   Amendment violation when: (1) the deprivation alleged is 'objectively, sufficiently serious" and

27   (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate

28   indifference.  *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer*, 511 U.S.

1    at 834).  Thus, "not ... every injury suffered by one prisoner at the hands of another ... translates

2    into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511

3    U.S. at 833.  And "prison officials who actually knew of a substantial risk to inmate health or

4    safety may be found free from liability if they responded reasonably to the risk, even if the harm

5    ultimately was not averted." *Id*. at 845.

6         Plaintiff faults officer Villanueva, who was located in an office adjacent to the day room

7    with other correctional officers, for "waiting several minutes" before intervening to restrain the

8    inmate who was chasing Plaintiff around the day room.  Significant is that Plaintiff does not

9    allege that Villanueva took no action but instead faults the expediency of his action.  Plaintiff

10   attributes liability to Sergeant Cowing for "pitting" inmates against her because she was told by

11   an unidentified person that Cowing told the other inmate had at some unidentified time that

12   Plaintiff had "written a note against the inmate."  (Doc. No. 60-1, ¶ 97).  Plaintiff does not claim

13   that the inmate inflicted any physical injury upon her before Villanueva intervened.

14        While an inmate need not wait until they are injured to state a claim, here Villanueva

15   responded reasonably to the risk and with sufficient speed to avert Plaintiff from suffering any

16   apparent physical harm.[4]  *Grant v. Haro*, No. C 20-6562 WHA (PR), 2021 WL 3081116, at \*2

17   (N.D. Cal. July 21, 2021); (noting *Farmer* requires officials take *reasonable* measures).

18   Similarly, an official may be liable for an inmate assault if they actively permit or encourage it.

19   *Cantu v. Jones*, 293 F.3d 839, 844-45 (5th Cir. 2002); *Snider v. Dylag*, 188 F.3d 51, 55 (2d Cir.

20   1999).  Plaintiff states she learned from an identified source that Cowing told the inmate that

21   Plaintiff "wrote note against" her.  (Doc. No. 60-1, ¶ 97).[5]  Plaintiff's reference to a "note" is

22   vague.  Nor does Plaintiff provide the timeframe between when Cowing allegedly told the inmate

23   about the "note" and the incident in the day room.  Based upon the foregoing, the Court finds the

24   failure to protect claims as pled against Villanueva and Cowling would not survive a motion to

25   dismiss.

---

26

27   [4] According to the proposed SAC, the inmate came "[o]ut of nowhere."  (Doc. No. 60-1, ¶ 89).  Thus, correctional officials were not on notice of an impending attack.

28   [5] Despite not properly incorporating this allegation in support of her failure to protect claim, the Court nonetheless considers it to the extent relevant.

1     Accordingly, it is **RECOMMENDED**:

2     1.  Plaintiff's Motion to Amend (Doc. No. 60) be GRANTED to the extent that Plaintiff

3 may add file a second amended complaint to include only the allegations concerning the denial of

4 medical care as to Defendants Leslie Taylor, Chenoa Dill, Sergeant Gibson, Gerardo Garcia-

5 Torres, Officer Shoals, and Officer Goethe to Plaintiff's Eight Amendment medical deliberate

6 indifference claim in Count I.

7     2.  Plaintiff's Motion to Amend (Doc. No. 60) be DENIED to the extent Plaintiff may not

8 include in her second amended complaint Count II, a Fourteenth Amendment Claim Under the

9 Equal Protection Clause against Defendants Allison, Espinoza, Pallares, Mitchell, Felix, Haynes,

10 and Villanueva or Count III, an Eighth Amendment Claim for Failure to Protect Defendants

11 Allison, Espinoza, Pallares, Cowing, and Villanueva.

12                        NOTICE TO PARTIES

13     These findings and recommendations will be submitted to the United States district judge

14 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

15 days after being served with these findings and recommendations, a party may file written

16 objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

17 Findings and Recommendations."  Parties are advised that failure to file objections within the

18 specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

19 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

20

21 Dated:   February 27, 2023   

22                        HELENA M. BARCH-KUCHTA
                           UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

15